18-2115 Joyce Paul v. Emily Murphy May it please the Court, my name is Anna Munoz and I represent Appellant Joyce Paul in this matter. She is in the courtroom today and she asked me to mention that to the Court and I'd like to reserve three minutes for rebuttal. You may have it. Joyce Paul was a seasoned and successful contract specialist with the Federal Government for decades. And in what should have been the golden years of her career, she was instead the victim of both discrimination and retaliation. You do have a total of 15 minutes, but we're in appellate court. Could you get directly to why you think there was error on the findings that the discrimination claims based on sex and age were wrongly decided? And then separately deal with the retaliation claim. But perhaps you would start with the retaliation claim. Yes, Your Honor. One of the core principles of Burlington Northern is that context matters. Can I just get one clarification point on the retaliation claim? Yes, sir. I couldn't tell. Is that a claim that you're making as to both the ADA claim and the Title VII claim or only as to one? It's a claim of retaliation based on her complaint of discrimination to the EEO office in her agency, Your Honor. And that complaint contained both allegations of gender discrimination and age discrimination. And so when Mr. Lopez broadcast her EEO activity on a public whiteboard, what he was broadcasting was both her claim of age discrimination and her claim of gender discrimination. No, no, no. He said she was at the EEO office but didn't provide any details about why she was there or the nature of the claims or, for that matter, who she was complaining about. So you can't draw those inferences. But I take it your answer is both age and gender discrimination, retaliation. My answer to Judge Barron's questions is that the discrimination complaint encompassed both claims, and so that was the EEO activity he was referring to. No, I'm asking what your claims to us are on retaliation. Did you plead and brief to us a retaliation claim both as to the ADEA claim and as to the gender discrimination claim? Is the basis of your retaliation claim the ADEA, Title VII, or both? Both. And in answer to your question, Judge Lynch, I believe in the context of this case you can draw that inference. Can you move on? Let's talk about retaliation, what it is based on. The magistrate judge seemed to think that the writing of where she was on the board could not itself, whether with history or not with history, support a retaliation claim. And that was the basis for the decision against you. So let's, if one assumes that's questionable, what is it about, what is the evidence about the writing on the board that you put into the record? I take it, perhaps inferentially, that employees were supposed to write on the board where they were if they left the office, but that not everybody did that. Is that correct? Yes, the specific testimony of my client at Appendix Page 26 and Appendix Page 36 and 37 is that people rarely wrote their whereabouts on this whiteboard. Okay. Is there any evidence as to whether the supervisor, Lopez, ever wrote on the board where the employees were if they did not themselves write on the board? I take it there's no evidence on your side or, for that matter, on their side about this. So what the testimony is, again, at Appendix Page 26 and Appendix Pages 36 through 37, is the best evidence of how this whiteboard was used, and that evidence is that it was rarely used. That doesn't answer Judge Lynch's question. Is there any evidence about how Lopez handled this whiteboard with respect to other people who were absent from the office but neglected to write where they were going? That he either filled it in, that he ignored it? Is there any evidence at all about that? There's evidence that it was rarely used, but if the question, Your Honors, is, is there evidence that Mr. Lopez was involved in this whiteboard notation, I would point the court to Appendix Page. Well, would you please answer the question that you are asked and not move on to another point? What is the evidence about Lopez's practices with respect to the whiteboard? As I've looked at the record, there is no evidence. Is that correct? I think that it is correct that there is no direct statements about how Mr. Lopez treated the whiteboard as a general matter. But what I would say is that if there is evidence that the whiteboard is mostly empty, then a jury could infer that he's not going in on a routine basis and filling in where people's whereabouts are. And I think that's connected. Excuse me. I have another question. Is there any evidence that any other person in the unit for which Lopez was responsible left the office for an EEO hearing or to work on an EEO complaint or anything of the sort, and that Lopez either did or did not fill in the whiteboard in response to that absence? No. This is fruitful. Is there any evidence? What is the evidence about what Lopez knew that would explain the notation? I think there's two kinds of evidence, Your Honor. And the first I would point you to is at appendix page 226, which is the email from the EEO regional matter to Ms. Paul when she complains about notation. A fair inference from that email is that he was informed he should never do that again. So there is evidence that he fully did it. Again, that leads me to think that there had never been any notice from the EEO office to people that there was an exception to the rule that you put on the whiteboard where you're going, and that was an exception for going to the EEO office. That the email more or less says, all right, going forward, we're telling you now, don't do that. This is where I think context matters in two respects, Your Honor. First, context tells us about the character of his notation, why he would do it, and what it would mean in this office. And Ms. Paul established a record that for the entirety of her time in this division, she was teased and targeted because of her prior EEO activity. Now, we're not claiming a causal connection between that prior EEO activity and any retaliation, but it does tell you how it would have been received. And I think a fair inference is how Mr. Lopez would have intended it. Excuse me, what evidence is there that Lopez knew about the prior EEO complaint? And secondly, that he knew about the teasing. So I think that at appendix page 36, it is my client's testimony, that the teasing was so frequent that on several occasions she went to Mr. Lopez, complained about it, and said, I just want it to stop. I just want it to go away. That's her testimony, and it's unchallenged on this record. Is that the teasing about the prior EEOC activity? Yes, the prior EEOC. Not the activity that was listed on the board? Yes, and there's also evidence that when the discrimination... I'm sorry, that's an ambiguity. You mean yes, you mean no? I may have just misunderstood the question. Sorry, sir. You identified evidence that would indicate that Lopez knew that the plaintiff had been teased about prior EEO activity? Yes, Your Honor. This is neither bad nor good for you. Okay. I just want to know what it is, okay? There is no evidence that he knew she had been teased about the EEO activity that was referenced on the board. I think there is evidence that he knew about it, and that he... He knew about the teasing about it? Or that there was teasing about it? To be very clear, there is evidence that she was teased about this EEO complaint by others in the office prior to this white board notification. Okay, I got it. But there is evidence that he had teased, not her directly, but had sort of teasingly spoken of it to others. But when she began to complain, he said, oh, Joyce went to Jen Dunbar about me. And in the context of a small department where this is a rumor that has been following Ms. Paul around for the entirety of her career, I think a fair inference is that he must have known how that would be received. Okay. My turn to be confused about what's in the record. I thought the teasing she referred to had to do with the complaint much earlier. 20 years ago. 20 years earlier about the Navy. Okay. Is there evidence that she was teased after he wrote on the white board? There is no evidence that she was teased after he wrote on the white board. But for the purposes of her retaliation claim, the adverse action is the notation. So I don't think that she needs to establish... All right. Your answers suggested there was teasing later. Okay. I'm sorry, just on this. You did suggest that Lopez made a comment about the activity that you say he was referring to on the note board prior to writing on the note board. About the claim of discrimination. But the notation EEO activity I believe refers to the fact that she had gone to the EEO office to be interviewed. But you're saying... But the complaint predates that notation. And you're saying though that the reference to the Dunbar is a reference to the same substantive complaint that she was bringing to the EEO and therefore you could infer that when he put up EEO activity, he was doing that already in the mindset of having made the kind of comment he did about her going to Dunbar about that same activity. Is that the idea? Yes, Your Honor. Okay. And when was the Dunbar comment? It's not entirely clear from the record exactly where it was, when it was, but it was prior to the EEO notation and prior to the EEO interview. But I can't give you an exact time. Okay. Another question I had really had to do with she says she was teased, but she also says she counseled other employees about bringing EEO complaints. I don't know whether she initiated it, they did, but it sort of seems like if she was counseling other people about the prior complaint, then it's hard to see why a notation that she is at an EEO office alters her working conditions. I think what's a fair inference from that testimony in the record is that Ms. Paul is a great believer in fighting discrimination. It's something that she had done for the entirety of her career. What about her working conditions has been changed if, in fact, other people in the office put aside whether Lopez knew and she is talking to them, giving them advice about bringing these complaints. How is there any humiliation out of his writing on the board that she can be found at the EEO office? Well, I think that the testimony is that she found the teasing to be harassing, to be humiliating, to be difficult. The fact that she at once also was willing to speak to people about fighting discrimination, I think just speaks to her commitment. I understand. Thank you. Can I have just one last question? Yes, sir. Just to nail down, what does the record suggest about how Lopez knows about the EEO activities such that he writes it on the board? I don't think there's no direct reference in the record about his knowledge of it. I don't think there's any question that he knew this complaint process was going on, in that he had gone to Jen Dunbar and talked about the fact that she had made this complaint. Made a complaint to her or to the EEOC? I'm sorry. That he went to somebody and talked about her, that she had gotten her union rep involved and that she was complaining about discrimination. We don't know anything about why the phrase EEO activity appears on that board. In other words, we don't know who told him that's where she was. We don't. I mean, I think we know that it was, what I would say is, I think we know that it was inappropriate from the email from the regional manager afterwards. So either she told him or she told somebody else who told him. That's possible, or EEO could have told him too. It's not in the record, but you could imagine common sense that there's a process that when an EEO complaint happens, it's important. I mean, I just, you deposed Lopez? I was not the, there was no attorney below. So Ms. Lopez proceeded per se and there were no depositions in this case.  Thank you very much. Thank you, Your Honor. Counsel. Good morning. Erin Berzius on behalf of Emily Murphy, administrator of the GSA. If it's all right, I'll start with your questions on retaliation here. It's our position that this one notation, even in the context of some prior statements and teasing, is simply not sufficient to meet the Burlington Northern standard. It's notable that after the incident was put on the white board, there was a month and a half between that notation and the time that she retired. And there's no evidence of any teasing or any comments at all about any of her EEO activity, the 2009 complaint or any of the previous one during that time period. So to the extent she may have subjectively felt that it was harassing in some way, to have that plain statement put on the EEO board, again, with no derogatory mention, just the fact that she was engaged in EEO activity, it simply doesn't meet the objective standard. There was no injury or harm that resulted from it. So is that because of the relevance of listing where she was in light of the board or because a public statement that somebody in the office is engaged in EEO activity can never be a basis for retaliation? I'd say that this, the public statement on its own, is simply not generally. So if you just put up a sign that says plaintiff is engaged in EEO activity and it's on the door of the office when you walk in, that's not a problem? That's not retaliation? The Fifth Circuit has held that supervising the board. No, no. You know, in this context, I would simply say. in unreasoned, per curiam, unpublished decisions. GSA doesn't need to go that far. I mean, don't you think if the supervisor posted on a white sheet of paper, taped where everybody could see it, she's gone to the EEO office. If there were no white board, if there were no obligation to write down where you were, don't you think that would be a different situation? I agree it would be a different situation. All right, so now can we get back to this situation and what the evidence is? And I will say it is not helpful that the affidavit from Mr. Lopez or the statement to the GSA administrators just doesn't talk about this at all. Yes, Your Honor. He does say there that he didn't learn of her EEO activity at all until the 2009 complaint. It doesn't give a time again, and I realize that the record is unclear on that point. But he does say that he didn't learn of her prior EEO. Correct. Okay, but it says absolutely nothing about the white board, why he wrote what he wrote on it, what his habits were as to other employees of the office. Yes, Your Honor, I realize that. I will point you to— Well, if you as counsel realize that, why did you rely on the record before the agency and not put any evidence before the district court? Your Honor, I did not handle this case below, so I cannot speak to that. Is it GSA's habit never to actually defend litigation but merely to put in front of the district court the proceedings before GSA? I do not know the answer to that. I would imagine not, Your Honor. I think in this case, the facts before the district court were Ms. Paul's EEO affidavit, Mr. Lopez's rebuttal affidavit, and then Ms. Paul had another affidavit. And in her rebuttal to Mr. Lopez's affidavit, she states, I cannot prove that Ivan knew, referring to her previous EEO activity and to the teasing and all of that, but I certainly do not believe that he was unaware. So again, there's just not evidence here, and it's Ms. Paul's burden. How about just on the whiteboard, the notation on the board? Couldn't a jury find on this record that it was unusual to place details about where somebody was in the office? I would argue not. If you look at appendix page 36 of Ms. Paul's affidavit, she says, Rosemary Russo, the timekeeper, was always complaining that other people didn't write their time on the board. That's consistently what I just said. Well, that it was something that did happen and that management wanted it to happen. Usually didn't, otherwise why would she be complaining? Well, that it was something that may not have consistently happened, but it's something that management wanted to happen. Exactly, but didn't happen. Wow. Consistently. Right, and we'd say even if... They could find it was unusual, but again, there's no injury that flowed from that. Now we're back to the first point, which is posting a sign saying that EEO activity wouldn't even be injurious. What I'm trying to suggest is there's a board that if a jury could find is not usually used to show where people are, and then it is used to show where people are, and it's put on by her supervisor, who has made a comment about her having raised the substance of objections that are underlying the EEO complaint, and there is no other evidence as to why he did that. Couldn't a jury conclude he did that to shame her? It doesn't say a jury has to find that, but what would be illogical about a jury concluding that? I don't think it's sufficient on this record. Again, the comment about her going to the union, she made that to the former head of the union. It's not him going to an unrelated colleague making a snarky or snide comment, totally unrelated. There's nothing inappropriate about going to the head of the union to say, oh, Joyce went to Jen, the union rep, about this complaint. There's nothing derogatory. There's no other statements against her EEO activity. There's no evidence that he had any problem with her EEO activity in general. There's only one statement purely of the fact that she was engaged in activity. There's no other evidence that he meant to shame her in any way. Given the objective test, I suppose your argument is there's no evidence he meant to shame her, but in any event, on this evidence, given that she retired a few months later and there's no evidence that there was any shaming, simply isn't enough. Yes, Your Honor, that's correct. But that's a different analysis than that used in the district court. I would argue both that the district court was correct, but also in the alternative that the objective standard here means that you have to look as well to what happened afterwards. The district court did consider what happened afterwards. Oh, it did? Yes, it did. The magistrate specifically mentioned that there was no harm that happened. But I thought the test for retaliation was simply whether the retaliatory action was of a kind that would chill the complaint, not create workplace conditions that would lead you to leave. It's not a constructive discharge claim. It's just, would this type of activity chill somebody from pursuing EEOC activity? It seems like it would. Well, but Boylington Northern talked about separating not all harms are sufficient to meet that standard. You separate the trivial from the material. And here, if it's not material, it doesn't rise to that level to simply have this notation. If you look at the court's decision in Alvarado where it looked at a retaliatory hostile work environment situation, the court found there that a number of derogatory comments about the plaintiff's psychological conditions by the supervisor and by coworkers there were not sufficient to meet the Burlington Northern standard. It also discussed Noviello, as the plaintiff pointed out, but it did rely on the Burlington Northern standard there. And that's not sufficient. And we would submit that there's simply much less evidence here than in that case. I'll tell you what. Your opponent has three minutes reserved for rebuttal. Why don't we hear from her, and you will have a minute if you need to reply. Okay? I'll begin where my opponent ended, which is Burlington Northern. I think the more important principle in Burlington Northern is that context matters. And because of that, what the court said in Burlington Northern is that seemingly small slides, when put in context, the lack of an invitation to a lunch, a slight schedule change, can rise the level of retaliation. And so it matters is the context. And as we've ably explored here, there is a lot of context. I think it's also important to recognize that the government's position would lead, I think, to a troubling bright-line rule, which is that under the standard, you know, if a supervisor learns of a complaint discrimination against him or her, no matter the context, they can publicize that to the entire court. That's not the government's position, and she expressly disavowed that. What she's saying is if you look at the context and the lack of evidence from the plaintiff about many aspects of that context, and the district court finding about lack of evidence of harm after this, that's why she wins. The evidence of the lack of harm after this, I don't believe, tells us conclusively about the character of this action. No, I'm not telling you conclusively, but it's certainly admissible evidence on whether the objective standard in Burlington has been, is met. I take your point, Your Honor. So your statement that context matters is another way of saying that facts matter. And the plaintiff really didn't provide us many facts in connection with this allegation, facts that she could have provided, you know, particularly with respect to what Lopez had done or failed to do in other instances with this whiteboard. I think that she did the best that she could, proceeding per se below, and as I reviewed earlier. Well, considering that she'd been in the office for a long period of time, she should have been able to account for what he had done, what she had seen him do or not do, and there's no such evidence in that. Well, there's certainly evidence that she let him know how troubled she was about the teasing, and there's certainly evidence of the ubiquity of the teasing. And I would think that a reasonable jury could take that evidence and infer that he knew what he was doing, that it was a shot across the bow when he wrote EEO activity next to her name on a public whiteboard. I would just like to say one short thing about her claim of gender discrimination. There is a dispute in the record both as to her performance and as to the extent of who reviewed her and when, and I just wanted to quickly review that because I'm not sure it came out clearly in the briefing. So what Ms. Paul states in her affidavit is that to the best of her recollection is that I received only two performance ratings from Mr. Lopez for 2007 and 2008. That's at appendix page 27. It's corroborated by appendix page 27. Counsel, your time is up. Thank you. Thank you. Does GSA need a minute? Yes, Your Honor. I think if I could just respond to that last point about the performance evaluations. I believe that Mr. Lopez did the 2007 and the 2008 performance evaluations. He's also listed as a signatory on the final year of the 2006 performance evaluation. He began as a supervisor in April of 2006. That's all. Thank you. Thank you both. The court is going to be in recess and then there will be a new panel hearing a case whenever it's ready. The recorder is on. Hang on. Thank you.